UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH MIZZONI,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>C/O ALLISON, *et al.*,<br><br>　　　　　　　Defendants. | 3:15-cv-00313-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF Nos. 52, 53 (sealed), 54, 67), plaintiff's opposition (ECF No. 60), and defendants' reply (ECF No. 62). Having thoroughly reviewed the record and papers, the court hereby recommends that the defendants' motion for summary judgment be granted in part and denied in part.

## I.　　PROCEDURAL HISTORY

　　　Joseph Mizzoni ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at High Desert State Prison ("HDSP") in Indian Springs, Nevada. Pursuant to 42 U.S.C. § 1983 and proceeding *pro se*, plaintiff brings a civil rights action for violations of his constitutional rights.

　　　According to the amended complaint, the events giving rise to plaintiff's claims are as follows. On March 28, 2015, plaintiff's cell was searched by correctional officers Joseph Allison ("Allison"), Robert Ardinger ("Ardinger"), and Chris Smith ("Smith"), which resulted in his cell being left in disarray. (ECF No. 40 at 10.) Plaintiff went to the Unit 5 rotunda and told Smith he did not appreciate his cell being torn up and that he quit his job as a porter. (*Id.*) Plaintiff alleges Smith "rushed" him and said, "What the f--- did you say?" (*Id.*) Smith then ordered plaintiff to

get against the wall with his hands up, which plaintiff did. (*Id.*) Plaintiff alleges he and Smith struggled and that Smith wrestled him to the ground and handcuffed him while he was on his stomach with his hands behind his back. (*Id.*) Plaintiff states that on his disciplinary report, Smith wrote that he used force because plaintiff told Smith to "shove it up your ass." (*Id.*) Plaintiff denies he made that statement and further maintains that "ass" is not abusive language. (*Id.* at 10-11.)

Once plaintiff was on the ground, he alleges that several other correctional officers, including Allison, Ardinger, and John Henley ("Henley"), arrived and jumped on plaintiff, stepped on him, dragged him, and put him in a chokehold. (*Id.* at 5.) Plaintiff claims that Henley repeatedly slammed his head into the concrete floor, saying, "You hit my c/o?" (*Id.*) This continued for some time, and plaintiff states he lost consciousness twice. (*Id.* at 6.) Plaintiff alleges that Julliette Roberson ("Roberson") video-taped the incident and other correctional officers were standing by and watching. (*Id.*) The correctional officers, including John Hill ("Hill"), Lee Grider ("Grider"), Joel Hightower ("Hightower"), Henley, and Steven Crowder ("Crowder")[1] then dragged plaintiff from the unit, across the courtyard, to Unit 8. (*Id.* at 6, 14-15.) Plaintiff alleges that Hill pulled his left thumb backwards to break it and the other correctional officers were bending his cuffed wrists upward, causing severe pain. (*Id.*)

Once in the infirmary, plaintiff claims the nurses only gave him a cursory exam, used only bandages and not stitches, and did not give him any x-rays or other diagnostic tests. (*Id.* at 7.) Plaintiff alleges that Roberson continued to videotape the incident and that Smith stated, "This is what you get for hitting a c/o." (*Id.*) Plaintiff denies hitting Smith. (*Id.*) Plaintiff claims he received a false disciplinary write-up for abusive language, assault, and battery. (*Id.*) Plaintiff asserts that Nathan Garnica ("Garnica") dragged plaintiff back to his unit with the handcuffs so tight, they were cutting off circulation. (*Id.* at 7, 16.) Finally, plaintiff alleges that as a result of the incident, he suffered permanent scarring on the left side of his face, loss of hearing in his left

---

[1] Defendants' motion for summary judgment is not brought on behalf of defendant Crowder.

ear, headaches, dizziness, permanent scarring and pain in his knees, and neck and lower back pain. (*Id.* at 9.)

On September 2, 2016, the District Court screened the amended complaint (ECF No. 41). The Court permitted two claims to proceed: (1) a First Amendment claim for retaliation against defendants Smith, Ardinger, Allison, and Henley, (*Id.* at 6-7); and (2) an Eighth Amendment claim for excessive force against defendants Smith, Ardinger, Allison, Henley, Roberson, Hill, Grider, Hightower, Crowder, and Garnica. (*Id.*)

On May 31, 2016, the parties participated in a mediation session as part of the District of Nevada's early inmate mediation program, but did not settle. On November 1, 2016, defendants moved for summary judgment (ECF No. 84). This recommended disposition follows.

## II.     LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of

the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

**A.   Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.    First Amendment - Retaliation**

In his amended complaint, plaintiff alleges that defendants retaliated against him through use of excessive force because he complained about his cell search and announced he quit his porter job. (ECF No. 41 at 10-11.)

It is well-established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68.

To prevail against defendants' motion for summary judgment, plaintiff must demonstrate a triable issue of material fact on each element of his retaliation claims. *Brodheim*, 584 F.3d at 1269 n.3. In support of summary judgment, defendants argue that plaintiff cannot carry his burden with respect to elements two, three, and five in his claim. (ECF No. 52 at 13-19.) In

addition, they maintain that defendants Smith, Ardinger, Allison, and Henley are entitled to qualified immunity. (*Id.* at 19-20.) Finally, they argue that Henley is entitled to summary judgment, as he had no personal involvement in the alleged retaliation. (*Id.* at 22-23.)

### 1. Conduct Protected by the First Amendment

The court first notes that, while typically a grievance is a written mechanism, the Ninth Circuit has held that a verbal complaint to prison officials can constitute conduct protected by the First Amendment. *See Jones v. Williams*, 791 F.3d 1023, 1035-36 (9th Cir. 2015) (complaints of discrimination to inmate's supervisors and statements of intention to file suit were conduct protected by the First Amendment). Thus, plaintiff's alleged verbal complaints to Smith about his cell search are conduct protected by the First Amendment.

### 2. Retaliatory Motive

To satisfy the second element of a retaliation claim, a plaintiff must show that his First Amendment activity was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The evidence establishing such a motive is often circumstantial, *see id.*, but "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Defendants contend that the initial force used on plaintiff occurred because plaintiff turned off the wall in a threatening manner towards Smith, and not because of anything plaintiff said to Smith. (ECF No. 52 at 14-16.) Defendants further contend that force continued to be used after plaintiff struck Smith with a closed fist and other officers witnessed plaintiff attempting to strike Smith. (*Id.* at 15, 21.) To support their contention, defendants provide sworn declarations of defendants Allison and Ardinger, as well as plaintiff's disciplinary hearing report, incident information report, and investigation detail report. (ECF Nos. 52-3, 52-6, 52-7, 53-1 (sealed), 52-9.) Defendant Smith states that he brought plaintiff to the ground after he moved off the wall towards him, that plaintiff struck him with a closed fist, and that he struggled to restrain plaintiff until other officers arrived to assist him. (ECF Nos. 52-9 at 9-10; 53-1 at 28 (sealed).) Defendants Allison and Ardinger state that they witnessed plaintiff struggling and

attempting to punch Smith, causing them to step in to help restrain him. (ECF Nos. 52-3, 52-6, 52-9 at 8-9.) Defendant Henley states that he witnessed plaintiff struggling with officers on the ground. (ECF No. 52-9 at 4.) Defendants also provide photographs of what they allege are marks left on Smith's face after being punched by plaintiff. (ECF No. 53-2 at 7-10 (sealed).)

Plaintiff admits that he turned towards Smith before being taken down to the ground to be restrained. (ECF No. 40 at 5, 10.) Plaintiff denies striking or attempting to strike Smith. (*Id.* at 7.) However, plaintiff provides no evidence that the alleged excessive force was used *because of* his verbal complaint to Smith. Further, no other defendants were actually present when plaintiff allegedly complained to Smith about his cell being searched, making it highly unlikely that his First Amendment conduct would be the motivation behind their actions. Plaintiff has not shown that his First Amendment activity was the substantial or motivating behind defendants' actions, and, therefore, he has not carried his burden of demonstrating a genuine issue for trial. As no reasonable jury could conclude that Smith, Ardinger, Allison, or Henley used excessive force *because of* statements plaintiff made to Smith about the cell search, defendants are entitled to summary judgment as to count I.

Because the court finds that plaintiff cannot prove that adverse action was taken against him *because of* his protected First Amendment conduct, it need not address defendants' other arguments or defenses as to this claim.

C.   **Eighth Amendment - Excessive Use of Force**

Defendants argue that plaintiff's excessive force claim is without merit and that only necessary force was used on plaintiff after reasonably perceiving a threat, resulting in no serious injuries to plaintiff. (ECF No. 52 at 20-22.) Additionally, defendants argue that summary judgment should be granted as to defendants Henley, Roberson, Hill, and Garnica, as they did not personally participate in the alleged excessive force. (*Id.* at 22-23.)

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in

the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson*, 503 U.S. at 6 and *Whitley*, 475 U.S. at 320). Thus, the court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

Defendants maintain that excessive force was not used against plaintiff. (ECF No. 52.) Defendants claim that following a cell search, plaintiff aggressively approached Smith's office, hitting his door. (*Id.* at 20.) Plaintiff expressed his dissatisfaction with the search and told Smith he could "shove it up [his] ass" and that he was quitting his porter job. (*Id.*) Smith instructed plaintiff to put his hands against the wall so that he could be restrained, but as Smith went to restrain plaintiff, he turned off the wall in an aggressive manner. (*Id.*) Smith perceived this move to be threatening, so he took plaintiff to the ground to restrain him. (*Id.*) Plaintiff then struck Smith on the right temple with a closed fist. (*Id.* at 21.) Other officers observed plaintiff attempting to strike Smith. (*Id.*) Defendants Allison and Ardinger assisted Smith in restraining plaintiff on the ground. (*Id.*) Plaintiff was dropping his weight and refusing to walk, forcing defendants Grider and Hightower to implement wrist lock maneuvers so that plaintiff could be taken to medical, as he was bleeding from a cut above his eyebrow from the incident. (*Id.*) Defendants assert that any pain plaintiff felt because of the wrist lock maneuver was due to his own action in dropping his weight. (*Id.*) After plaintiff was cleared by medical staff, defendant Henley requested that Officer Samsel and defendant Garnica escort plaintiff back to his cell, which they did without using additional force. (*Id.*) After the incident, Smith was examined by medical staff who noted redness and swelling on his right temple. (*See id.*; *see also* ECF Nos. 53-1 at 7, 30 (sealed); 53-2 at 7-10 (sealed); 52-9 at 3.) Upon examination of plaintiff, medical staff noted swelling of his left eyebrow, as well as a one centimeter cut above his left eyebrow, dime-sized abrasions on his left knee, a small abrasion on his right wrist, and no vision disturbances or vertigo. (ECF Nos. 52 at 17; 53-1 at 3, 29 (sealed); 52-9 at 3; 53-2 at 2-6, 17 (sealed).) Plaintiff was later found guilty of battering Smith at a disciplinary hearing. (ECF Nos. 52 at 20; 52-7; 54-1.)

Defendants contend that minimal force was required when plaintiff was struggling and attempting to strike Smith and that defendants used an appropriate amount of force to subdue plaintiff in order to restore discipline. (ECF No. 52 at 20-22.) Defendants provide sworn declarations of some of the officers involved in the incident. (ECF Nos. 52-2, 52-3, 52-4, 52-5, 52-6.) Defendants also include the disciplinary hearing report, investigation detail report,

incident report, medical incident reports, and photographs of the incident. (ECF Nos. 52-7, 52-9, 53-1 (sealed), 53-2 (sealed), 53-3 (sealed).)

Plaintiff offers his affidavit as evidence in support of his version of the events. (ECF No. 60 at 35.) Plaintiff asserts that he went to talk to Smith about a recent cell search that left his cell in disarray. (*Id.* at 5.) Plaintiff states that Smith told him to face the wall and plaintiff turned away from the wall after Smith grabbed plaintiff's wrist in an aggressive manner. (*Id.*) Smith then took plaintiff down to the ground, cuffed him, and sat on his back. (*Id.* at 6.) Plaintiff claims that he never hit or struck Smith and was compliant during the entirety of the incident. (*Id.*) Plaintiff asserts that though he offered no resistance, he was put in a chokehold, his left kidney/intestine area were pulled, his head was pounded repeatedly on concrete, his head and knees were grinded on the concrete, he was knocked unconscious twice, he was dragged backwards by his cuffed wrists, his thumbs were pulled back, and his cuffs were tightened so tightly that they cut off his circulation. (*Id.* at 18-19.) Plaintiff alleges that because of the alleged excessive force he suffered injuries and continues to have pain in his head, face, knees, wrists, back, and neck. (*Id.*) Plaintiff claims that numerous inmates witnessed the event, but he was unable to obtain statements from them. (*Id.* at 3, 6.) One such witness, Inmate Deyerle, made a statement during plaintiff's disciplinary hearing stating that he observed plaintiff being choked during the incident. (ECF No. 54-1.)

Viewing the evidence in the light most favorable to plaintiff, the court cannot say as a matter of law that the force used was not excessive. Plaintiff's and defendants' version of the events in question clearly differ, and both sides provide evidence in the form of supporting sworn declarations. Defendants characterize the force as "minimal" (ECF No. 52 at 21), while plaintiff characterizes the force as "maliciously and sadistically" applied. (ECF No. 60 at 21.) Defendants characterize plaintiff's injuries as *de minimis* (ECF No. 52 at 19), while plaintiff describes numerous injuries and continued pain. (*See* ECF No. 60 at 10-11.) It is not the court's role to weigh conflicting evidence or make credibility determinations, but only to determine whether there is a genuine issue of material fact for trial. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Further, the Ninth Circuit has found that the reasonableness of force

used is ordinarily a question of fact for the jury because such cases almost always turn on a jury's credibility determinations. *See Liston,* 120 F.3d at 976 n. 10.

The court finds that plaintiff has set forth evidence sufficient to raise a genuine issue of material fact for trial as to whether defendants used force "maliciously and sadistically" rather than as part of a "good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. Accordingly, the court recommends that defendants' motion for summary judgment be denied as to plaintiff's Eighth Amendment excessive force claim.

### 1.     Personal Participation of defendants Henley, Roberson, Hill, and Garnica

Finally, defendants argue that Henley, Roberson, Hill, and Garnica did not personally participate in the alleged excessive force incident and are, therefore, entitled to summary judgment. (ECF No. 52 at 22-23.) "Liability under §1983 must be based on the personal involvement of the defendant." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff alleges that defendant Henley slammed his head into the concrete floor repeatedly, that defendant Hill dragged plaintiff and pulled his left thumb backwards to break it, and that defendant Garnica dragged plaintiff back to his unit with his handcuffs on so tightly, they cut off his circulation. (*See* ECF No. 40 at 5-7, 14-16.) Plaintiff alleges that Roberson videotaped the incident and stood by as other defendants beat plaintiff. (ECF No. 60 at 33.) In general, government officials cannot be held liable under § 1983 for the constitutional violations of their subordinates. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); *Chudacoff v. Univ. Med. Ctr. of S. Nev.,* 649 F.3d 1143, 1151 (9th Cir. 2011). An exception is made where "'the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Maxwell v. Cnty. of San Diego,* 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)). Here, plaintiff has alleged that Roberson, a Sergeant, witnessed the alleged excessive force of inferior officers and failed to prevent or stop it. (ECF No. 60 at 33.) As discussed above, it is not the court's role to make credibility determinations, as such, the court finds that plaintiff has set forth evidence sufficient to raise a genuine issue of material fact. Accordingly, summary judgment as to these defendants is not appropriate.

## IV.   CONCLUSION

Based upon the foregoing, the court recommends that defendants' motion for summary judgment be granted in part and denied in part. Under count II, plaintiff raised a triable issue of fact as to whether defendants used excessive force against him. However, summary judgment is properly granted as to the count I retaliation claim. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 52) be **GRANTED** as to the count I retaliation claim against Smith, Ardinger, Allison, and Henley.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (ECF No. 52) be **DENIED** as to the count II excessive force claim against Smith, Ardinger, Allison, Henley, Roberson, Hill, Grider, Hightower, and Garnica.

DATED: March 7, 2017

_____
UNITED STATES MAGISTRATE JUDGE