|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |

| | |
|---|---|
| JOSEPH MIZZONI, | 3:15-cv-00313-MMD-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| C/O ALLISON, *et al.*, | **OF U.S. MAGISTRATE JUDGE** |
| Defendant. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion seeking permission to file a spoliation/destruction of video tape evidence against defendants. (ECF No. 91.) Defendants filed a response (ECF No. 102) and plaintiff replied (ECF No. 103). The court has thoroughly reviewed the record, and recommends that plaintiff's motion (ECF No. 91) be granted in part and denied in part.

## I.  HISTORY & PROCEDURAL BACKGROUND

Joseph Mizzoni ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 91.) Proceeding *pro se* and pursuant to 42 U.S.C. § 1983, plaintiff brings a First Amendment retaliation claim and an Eighth Amendment excessive force claim against several NDOC and Northern Nevada Correctional Center ("NNCC") officials. (ECF No. 40.) Plaintiff sues Joseph Allison, Robert Ardinger, Steven Crowder, Nathan Garnica, Lee Grider, Sergeant John Henley, Joel Hightower, John Hill, Sergeant Juliette Roberson, and Christopher Smith (collectively, "defendants"). (*Id.*) Plaintiff's claims concern his involvement in a physical altercation with multiple correctional officers at NNCC.[1]  (*See* ECF No. 40.)

According to the First Amended Complaint, plaintiff alleges that on March 28, 2015, he confronted Smith in the rotunda of housing Unit 5 to complain about a cell search. (*See* ECF No.

---

[1] Plaintiff is now incarcerated at High Desert State Prison ("HDSP"). (ECF No. 8.)

-1-

1  40.) Smith ordered plaintiff to put his hands on the wall. (*Id.* at 4.) Although he allegedly complied
2  with Smith's orders, Smith forcefully wrestled him to the ground and handcuffed him. (*Id.*) Plaintiff
3  contends that there were inmates present during this physical altercation and that there is a video
4  camera in unit 5 that also would have captured the incident. (*See* ECF No. 40 at 5.)

5  Officers arrived shortly after and allegedly dragged plaintiff to another area in the rotunda,
6  which plaintiff speculates was out of view of both the Unit 5 camera and the inmates in the vicinity.
7  The officers beat plaintiff and plaintiff lost consciousness twice. Plaintiff believes that Roberson
8  "took pictures and video of the whole insident [sic] in Unit 5" because he saw her point the camera
9  at him while the other defendant officers beat him. (ECF No. 40 at 12.) Finally, plaintiff alleges that
10 suffered further physical abuses while being escorted to the infirmary in Unit 8 and back to his cell.
11 (*Id.* at 14-16.)

12 Defendants dispute plaintiff's versions of events. Notably, defendants maintain that plaintiff
13 approached Smith in an aggressive manner and told Smith to "shove it up your ass!" (EC No. 52 at
14 3; ECF No. 103 Exh. C.) After Smith ordered plaintiff to put his hands on the wall, plaintiff turned
15 from the wall toward Smith and a struggle ensued. Plaintiff punched plaintiff in the temple while
16 Smith called for assistance. (*Id.* at 4.) Defendants further allege that Grider and Hightower were
17 required to implement a wrist lock maneuver on plaintiff because he was resisting his escort to the
18 infirmary. (*Id.* at 5.)

19 Plaintiff provides evidence that he requested relevant video footage and photographs of the
20 incident in the weeks following the incident. On April 5, 2015, plaintiff submitted an inmate request
21 form to NNCC Associate Warden Walsh. (ECF No. 91 Exh. A.) He began by noting that during a
22 disciplinary hearing on April 4, 2015, Smith admitted to the presence of several inmates in the rotunda
23 who may have witnessed the incident. (*Id.*; *see also* ECF No. 103 at 10.) Plaintiff requested that
24 witnesses and other evidence concerning the incident be presented at his disciplinary hearing in order
25 to allow him to confront the witnesses and charges against him. (*Id.*) Plaintiff's request included all
26 video footage and still pictures "from inside unit 5 to 7-A-38" that were recorded on the date of the
27 physical altercation. (*Id.*) Associate Warden Walsh replied simply, "[a]dhere to the process." (*Id.*)

Additionally, plaintiff filed a grievance on April 15, 2015, echoing his request for video and picture evidence capturing the incident or witnesses to the incident. (Plaintiff's Exh. G.) NDOC denied plaintiff's grievance and appeals. (*Id.*) A disciplinary hearing was held on May 1, 2015, plaintiff was found guilty of battery, and he was sentenced to two years of disciplinary segregation. (*Id*. at 5.)

Plaintiff filed his complaint on June 12, 2015. (ECF No. 1-1.) The Court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed plaintiff to proceed on his First Amendment retaliation claim against Smith, Ardinger, Allison, and Henley, and on his Eighth Amendment excessive force claim against Smith, Ardinger, Allison, Henley, Roberson, Hill, Girder, Hightower, Crowder, and Garnica. (ECF No. 41.)

On September 5, 2017, plaintiff filed a motion for relief under Federal Rules of Civil Procedure Rule 6 ("spoliation motion"). (ECF No. 91). Plaintiff contends that defendants are guilty of spoliation of material evidence, i.e., video footage from Unit 5, 6, 7, 8, as well as handheld footage which would have been incriminating to defendants. *Id.* at 3. The court held plaintiff's motion in abeyance pending ruling on plaintiff's spoliation motion in case 3:15-cv-0499-MMD-WGC, *Joseph L. Mizzoni v. State of Nevada, et al*, because that case concerns the same underlying events. (ECF No. 93 at 2.) Following the issuance of the Report and Recommendation in case 3:15-cv-0499-MMD-WGC, the parties filed separate case management reports indicating that they agreed to set deadlines for responses to plaintiff's spoliation motion. (ECF No. 98; ECF No. 100.) Defendants timely filed their opposition to plaintiff's spoliation motion, and plaintiff relied in support of his motion. (ECF No. 102 and 103.)

The court held a hearing on the spoliation motion on January 11, 2018, and it scheduled a settlement conference and deferred a ruling on the spoliation motion until after the settlement conference. (ECF No. 109.) The settlement conference was held on February 27, 2018 but the parties failed to reach an agreement. (ECF No. 115.) Plaintiff's spoliation motion is now before the court.

## II. DISCUSSION

### A. Spoliation

"The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Thompson v. U.S. Dep't of House & Urban Dev.,* 219 F.R.D. 93, 100 (D. Md. 2003); *see In re Napster, Inc. Copyright Litigation* (*In re Napster*), 462 F. Supp. 2d 1060 (N.D. Cal. 2006). Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence" in pending or reasonably foreseeable litigation. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). "Evidence that must be preserved includes documents, electronically stored information, and physical evidence…." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23–24 (S.D.N.Y.2010) (internal citations omitted).

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir.2006) (quoting *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1337–38 (9th Cir.1985)).

### B. Federal Rule of Civil Procedure 37(b)

Federal Rules of Civil Procedure ("FRCP") Rule 37(b) authorizes broad sanctions against a party who fails to comply with a discovery order. FED. R. CIV. P. 37(b)(2)(A). FRCP Rule 37(b)(2)(A) provides: "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." *Id*. The record reflects that defendants have complied with all court orders and have participated in discovery in good faith. Although defendants have not produced the alleged video recording that plaintiff seeks in this litigation, defendants are not in violation of a particular order. Therefore, sanctions under Rule 37 are improper. The court proceeds to review plaintiff's motion under its inherent power to sanction.

**C. Court's Inherent Power to Sanction**

Courts have the authority to sanction litigants for spoliating evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Napster*, 462 F. Supp. 2d at 1066 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered;  (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery[.]" *Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting *Thompson,* 219 F.R.D. at 101); *see United States v. $40,955 In U.S. Currency,* 554 F.3d 752, 758 (9th Cir. 2009); *Leon*, 464 F.3d at 958 (9th Cir.2006).

The party seeking spoliation sanctions has the burden of establishing the elements by a preponderance of the evidence. *Mizzoni v. Nevada*, No. 3:15-CV-00499-MMD-WGC, 2017 WL 4284597, at *3 (D. Nev. Sept. 27, 2017), *report and recommendation adopted*, No. 3:15-CV-00499-MMD-WGC, 2018 WL 485873 (D. Nev. Jan. 19, 2018); *see In re Napster*, 462 F. Supp. 2d 1060 (noting that "the Ninth Circuit has not squarely addressed the issue of which standard of proof is appropriate" and declining to adopt the "heightened standard" of clear and convincing evidence.)

*1. Duty to Preserve and Culpability*

A litigant has the 'duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.'" *In re Pfizer Inc. Sec. Litig.,* 288 F.R.D. 297, 313 (S.D.N.Y. 2013) (quoting *Passlogix*, 708 F. Supp. 2d at 409); *In re Napster*, 462 F. Supp. 2d at 1067.  Litigation need not be "imminent or probable" to be reasonably foreseeable and "the proper standard for determining when the duty to preserve documents attaches is the flexible one of reasonably foreseeable litigation." *Micron Technology, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).

However, a party does not engage in spoliation of evidence when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course business. *$40,955 In U.S. Currency,* 554 F.3d at 758. In other words, "sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." *In re WRT Energy Sec. Litig.,* 246 F.R.D. 185, 195 (S.D.N.Y.2007). A court may impose sanctions if it finds that the party acted at least negligently in destroying or losing the despoiled material. *Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 418 (S.D.N.Y. 2010).

The thrust of plaintiff's spoliation motion is that defendants failed to preserve video evidence from the Unit 5 Rotunda that would have captured his altercation with Smith, as well as any inmates who may have witnessed the altercation. Additionally, he argues that defendants failed to preserve video evidence from inside and outside housing units 4, 5, 7, 8 that would have captured the excessive force he suffered during his escort to and from the infirmary. (ECF No. 91 at 1-4.) Finally, he appears to argue that Sergeant Roberson violated her duties under the Administrative Regulations by using a defective handheld camera that failed to capture the incident. (*Id.* at 2-3.)

With respect to the handheld camera evidence, defendants maintain that that Roberson did not record the incident. (ECF No. 102 at 5-6.) In the Investigation Detail Report attached to plaintiff's motion, Roberson reported that plaintiff had been "placed in compliant pin" when she arrived. (ECF No. 91 Exh. C at 4.) She noticed the camera defect only after she "attempted to photograph the right side of Officer Smith's face," well after the incident. (*Id.*) On these facts, it is clear that Roberson did not photograph the struggle between plaintiff and Smith, and it is likely that she was not present during the struggle. Rather than dispute whether Roberson took a photograph of the incident, plaintiff adopts Roberson's account to support his argument that she "didn't do any of [AR 405's] requirements" and emphasizes that she failed to minimize the possibility of technical issues. (ECF No. 91 at 2-3.) While Roberson's conduct may have fallen short of AR 405, plaintiff's argument that defendants should be sanctioned is not cognizable here. The court cannot award spoliation sanctions based on the failure to create evidence. *Genon Mid–Atlantic, LLC v. Stone & Webster,* 282 F.R.D. 346,357 (party must demonstrate the evidence actually existed and was destroyed); *see Fernandez v.*

*Centric*, No. 3:12-CV-00401-LRH, 2014 WL 2042148, at *9 (D. Nev. May 16, 2014). No duty to preserve evidence can attach to evidence that did not exist in the first place.

In contrast, there is ample evidence that the video footage from the surveillance cameras in Unit 4, 5, 7 and 8 existed at one point. In his declaration, Associate Warden Ronald Schreckengost states that the NNCC security cameras are on a recording loop, such that video footage is automatically erased and recorded over every ten to fourteen days in the ordinary course of business. (Def. Exh. A at 2.) If the security cameras record an incident, such as an assault, then NDOC retains a copy indefinitely. (*Id.* at 2.) He states that no video footage of the incident between plaintiff and Smith ever existed because there is no video coverage in the Unit 5 Rotunda. (*Id.* at 1.) Further, Schreckengost declares that he conducted an investigation and found no video footage from elsewhere in the institution capturing any portion of the incident. (*Id.*) In his view, the absence of the requested video footage demonstrates that the cameras did not capture a "significant incident" that would have required retention. (*Id.*)

Despite undisputed evidence that the Unit 4, 7, and 8 video footage was destroyed, plaintiff fails to establish that defendants had a duty to preserve such footage. Based on Schreckengost's declaration, the court can only presume that the excessive force plaintiff claims to have suffered during his escort was not captured by these cameras because, if had it been, then the corresponding video footage would have been preserved as evidence of an "incident." (*Id.* at 2.) While this logic is not unassailable, plaintiff offers no evidence or argument of his own that the cameras captured the officer's use of force. He provides a report by Grider and Hightower that admits to a use of a "wrist-lock maneuver" and other force to "stand [plaintiff] up" because plaintiff kept "dropping his weight." (ECF No. 103 Exh. C at 6.) This is sufficient to establish that some quantum of force was exercised upon plaintiff, but is insufficient to establish, by a preponderance of the evidence, that such force was captured and viewable on the Unit 4, 7, and 8 cameras. *See Zubulake v. UBS Warburg LLC* (*Zubalake IV*), 220 F.R.D. 212, 220-21 (S.D.N.Y. 2003) (moving party required to provide extrinsic evidence establishing elements of spoliation); *cf. Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) ("some extrinsic evidence of the content of the evidence is necessary for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental."). The

court will not project a duty to preserve the Unit 4, 7, and 8 footage upon defendants without any indication of its contents or evidentiary value.

However, plaintiff succeeds in providing evidence that the Unit 5 Rotunda video footage contained content that, once viewed, triggered a duty to preserve. In an investigative detail report, Sherman reported that after hearing Smith's radio call for assistance in Unit 5, he "began checking the institutional cameras to check Unit 5 for any information" but "was not able to see any of the incident on camera." (ECF No. 91 Exh. C at 1.) He then reviewed recorded footage from the unit for any possible information, but saw only inmates "mingling in the wings." (*Id.*) Plaintiff submitted a written request to Walsh, just nine days after the incident, that NDOC preserve the Unit 5 video footage to assist in the identification of witnesses. (ECF No. 91 Exh. A.) In the absence of evidence to the contrary, the court finds that Sherman, and any other NDOC official who reviewed the Unit 5 video footage, knew or should have known that footage captured potential witnesses to a violent altercation. At that point, litigation was reasonably foreseeable and the identity of these potential witnesses could be reasonably anticipated to "be requested during discovery" and "lead to the discovery of admissible evidence" in foreseeable future litigation. *In re Pfizer,* 288 F.R.D. at 313.

In light of plaintiff's formal request that the video evidence be preserved and that inmates present during the incident be identified (ECF No. 91 Exh. A), the failure to preserve the video footage from the Unit 5 Rotunda is negligent. *Zubulake IV,* 220 F.R.D. at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent."); *see Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012).[2] Defendants' objections to the existence of a duty and negligence is more properly understood as an objection of relevance, discussed below.

---

[2] It is immaterial that the negligence is attributable to Sherman and other non-defendant officials, rather than to the named defendant. The courts recommended sanction makes clear that NDOC officials, but not defendants, are at fault. *See Petit*, 45 F. Supp. 3d at 1111 (D. AZ. 2014) (imputing prison's spoliation of evidence unnecessary because sanction made no suggestion to the jury "that defendants themselves are in any way responsible for the loss of evidence.").

-8-

*2. Relevance*

When evidence is destroyed in bad faith, relevance is presumed, but "when the destruction is negligent, relevance must be proven by the party seeking the sanctions." *Zubulake IV*, 220 F.R.D. at 220. In the Ninth Circuit, satisfaction of the relevance element requires "a two-pronged finding of relevance and prejudice because for the court to issue sanctions, the absence of the evidence may be prejudicial to the party alleging spoliation of evidence." *Reinsdorf*, 296 F.R.D. at 627 (citations and quotations omitted). Relevance does not take on a new meaning in the context of spoliation where prejudice is considered separately. *See id.*; *cf. Zubulake v. UBS Warburg LLC* (*Zubulake V*), 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (referencing common definition of relevance under FED. R. EVID. 401 and FED. R. CIV. P. 26(b)(1) and adding that prejudice must also be shown). As such, relevant evidence includes video evidence that "is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* at 217; *William T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984).

Next, "[t]he prejudice inquiry looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (internal citation and quotation marks omitted) (alteration in original). A party suffers prejudice if the spoliation substantially denies that party the ability to support or defend its claim. *Henry v. Gil Indus.*, 983 F.2d 943, 948 (9th Cir. 1993) (quoting *Adriana Int'l Corp. v, Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)). In particular, the Ninth Circuit has held prejudice exists where a party is "forced to rely on incomplete and spotty evidence" as a result of an opposing party's failure to produce key evidence. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 353 (9th Cir. 1995). To satisfy its burden, the party asserting prejudice must only "come forward with plausible, concrete suggestions" about what the despoiled evidence "might have been." *Micron Technology*, 645 F.3d at 1328 (citing *Shmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994).

Obviously, any video evidence that captured the altercation between plaintiff and defendant prison officials would be sufficiently relevant to require its retention. However, defendants argue that nothing suggested the surveillance footage would be relevant to plaintiff's potential claims against NNCC prison guards because, as Schreckengost declares, the incident was not captured by any of the prison's surveillance cameras. (ECF No. 102 at 7-8; Def. Exh. A.) Plaintiff appears to argue that, at minimum, this footage would have enabled him to find witnesses for both his disciplinary hearing and his current case. (ECF No. 91 Exh. G at 10.) Sherman's statement that the video captured inmates "mingling in the wings" of Unit 5 at the time of the incident supports plaintiff's contention. (ECF No. 91 Exh. C at 1.) Defendants counter that the potential deprivation of witnesses goes only to plaintiff's due process claim in a concurrent case before the court, 3:15-cv-499-MMD-WGC, for which spoliation sanctions were imposed. Though this case does not involve a due process claim, the video evidence is still relevant because it would have allowed plaintiff to identify witnesses who may have been able to support his version of the events.

Furthermore, there is no indication that any NNCC official made a record of the inmates present at the scene of the incident and visible on the Unit 5 Rotunda video footage. The subsequent act of destroying the video evidence, therefore, interfered with plaintiff's ability to find corroborating witnesses. Nothing in the record indicates that plaintiff was able to identify the witnesses present by other means, and in fact he states in his motion for summary judgment that he has not been able to locate witnesses. (ECF No. 60.) Plaintiff is prejudiced because in the absence of a record of the inmates present during the altercation, he is forced to rely on his own testimony to establish excessive force. *See Anheuser-Busch*, 69 F.3d at 353; *Pettit*, 45 F. Supp. 3d at 1111 ("Nor is it sufficient to say that Plaintiff, a convicted felon being held in high security, can testify against uniformed prison guards at trial.") Even though it is far from certain that plaintiff would have found a corroborating witness, defendants' actions in obscuring potential witnesses "threaten[] to interfere with the rightful decision of the case." *Leon*, 464F.3d at 95.

The fact that the video tape from the Unit 5 Rotunda captured potential witnesses is sufficient to demonstrate its relevance. *See See LaJocies v. City of North Las Vegas,* No. 2:08-CV-00606-GMN-GWF, 2011 WL 1630331 *1, *1-2 (D. Nev. 2011) (finding that even if prison videotape did

-10-

1 not capture alleged excessive force, defendants "had an initial and continuing duty to preserve the videotape" because "it could likely have led to the discovery of other relevant evidence.") It is within the court's discretion to sanction defendants for spoliating the Unit 5 Rotunda video evidence. *Milbourn v. Marriott*, 67 F.3d 307 (9th Cir. 1995) (holding that district court is not required to impose sanctions whenever relevant evidence has been destroyed).

**D. Form of Sanctions**

Spoliation sanctions cannot go beyond what is necessary to enable a court "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The forms of sanction may include (1) attorney's fees and costs, even to *pro se* litigants, (2) an instruction to the jury that it must, or may, draw an inference adverse to the party or witness responsible for destroying the evidence, (3) an order excluding witness testimony proffered by the party responsible for destroying the evidence, or (4) a dispositive order dismissing the complaint or entering a default judgment. *In re Napster,* 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006); *Suroweic*, 790 F.Supp.2d at 1008 ("Fees to pro se litigants are awardable under the court's inherent power.") (internal quotation omitted). Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid*, 13 F.3d at 79; *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263 (9th Cir.1993); *see also Leon*, 464 F.3d at 959.

Plaintiff appears to request that the court enter default judgment against defendant. (ECF No. 91 Exh. G at 9) ("plaintiff asks for all his relief on this case…or jury instructions to defalt [sic] defendants.") Alternatively, plaintiff requests "relief of damages or jury instructions of destruction of evidence … at trial." (*Id.* at 10.) The court will now consider whether dismissal, attorney's fees, adverse inference, or a lesser sanction is appropriate. *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (satisfaction of the spoliation elements "merely permits, rather than requires, a district court to give an adverse inference instruction" or to award other sanctions).

-11-

*1. Dismissal*

In the Ninth Circuit, terminating sanctions, such as default judgments, are only appropriate in "extreme circumstances" where the party's noncompliance is "due to willfulness, fault, or bad faith." *Fjelstad*, 762 F.2d at 1337 (citing *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981)); *Leon*, 464 F.3d at 958. Before a district court imposes the "harsh sanction" of dismissal or a directed verdict, it "should consider the following factors: '(1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser–Busch v. Natural Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir.1995)). The court need not consider all factors because some may be inapplicable in the context of spoliation. *See Petit*, 45 F. Supp. 3d at 1105 n.1.

Despite the court's finding that plaintiff has suffered prejudice as a result of defendants' spoliation, he is not entitled to a final judgment in his favor. It is not clear that plaintiff would succeed on his excessive force and retaliation claims by mere virtue of his access to the Unit 5 Rotunda video footage. Although defendants' spoliation prejudiced plaintiff's ability to locate witnesses, plaintiff provides no evidence suggesting that those witnesses would provide favorable testimony. Finally, there are less severe sanctions available to remedy the harm defendants have caused to plaintiff and to the court. Thus, guaranteeing plaintiff success on the merits is inappropriate.

*2. Attorney's Fees and Costs*

Courts are unable to impose cost- and fee-shifting sanctions in the absence of bad faith. *Chambers*, 501 U.S. at 49 ("invocation of the inherent power [to award expenses] would require a finding of bad faith."); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("The bad-faith requirement … is very likely limited to the context of sanctions in the form of cost- and fee-shifting.") Having found that NDOC officials were merely negligent, the court recommends that plaintiff's request for attorney's fees, or any other spoliation "damages," be denied. (ECF No. 91 Exh. G at 10.)

*3. Adverse Inference*

"'[A]n adverse inference instruction can take many forms, again ranging in degrees of harshness.'" *Apple Inc.*, 881 F. Supp. 2d at 1150 (citation omitted). The level of harshness should be commensurate with the egregiousness of the conduct. *Id.* There are three levels of instructions generally considered: (1) "when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true"; (2) "when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption"; and (3) the least harsh instruction "permits (but does not require) a jury to presume that the lost evidence is both relevant and [substantively] favorable to the innocent party." *Id.* (citation omitted).

As discussed above, the court finds that defendants were negligent in destroying the Unit 5 Rotunda video footage, but there is no evidence that defendants acted recklessly, willfully, or in bad faith. *See LaJocies*, 2011 WL 1630331 at *1 (citing *In re Napster,* 462 F.Supp.2d at 1072) (party must establish by preponderance of the evidence that spoliation sanctions are proper). Irrebutable and mandatory presumptions are inappropriate. Despite defendants' culpable state of mind, a permissive presumption instruction is also inappropriate because there is no suggestion in the record that the Unit 5 video footage was favorable to plaintiff. The only evidence on the matter is Sherman's declaration that the video did not capture any portion of the underlying incident, but merely captured other inmates present during the incident. Plaintiff has only established, by mere dint of Sherman's contemporaneous report, that the unavailability of the video footage prejudiced his ability to identify witnesses. The court declines to award plaintiff a presumption that the witnesses, once identified, would provide testimony supporting his factual allegations. *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 386–87 (9th Cir. 2010) (adverse inference sanction should only deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence).

*4. Appropriate Sanction*

The court's inherent power to remedy despoiled evidence is not limited to issuing an adverse inference or disposing of a case. *See*, e.g., Petit, 45 F. Supp. 3d at 1114-1115 (allowing parties to

present evidence and argument concerning the lost evidence and instructing jury that prison had a duty to preserve the evidence); *Brown v. Albertsons*, No. 2:16-cv-01991-JAD-PAL, 2017 WL 1957571 (D. Nev. May 11, 2017) (plaintiff permitted to introduce evidence that defendant destroyed video evidence, and defendant permitted to introduce evidence explaining the destruction).  When fashioning a specific spoliation sanction to impose, courts generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Reinsdorf*, 296 F.R.D. at 626 (2013) (quoting *Apple, Inc.*, 888 F. Supp. 2d at 992 (N.D. Cal. 2012) (internal quotation marks omitted)).

The court finds that the sanctions imposed in plaintiff's parallel case, 3:15-cv-0499-MMD-WGC, are appropriate here as well.  In that case, the court permitted the parties to do as follows:

> present evidence and argument to the jury that he asked for this video footage; that the prison had a duty to preserve the footage once he asked for it; that other employees of the prison (and not the Defendants) failed to preserve the video footage; and that the video would have shown there were other inmates present in the wings of the Unit 5 rotunda that may have witnessed the incident between Plaintiff and Smith.

*Mizzoni v. State of Nevada*, No. 3:15-CV-00499-MMD-WGC, 2017 WL 4284597, at *3 (D. Nev. Sept. 27, 2017), *report and recommendation adopted*, No. 3:15-CV-00499-MMD-WGC, 2018 WL 485873 (D. Nev. Jan. 19, 2018).  While the due process claim at issue in that case differs from the excessive force claim at issue here, defendants' negligent spoliation has prejudiced plaintiff in both cases.

Defendants argue that the deprivation of potential witnesses goes directly to plaintiff's due process claim but has no bearing on the legal substance of plaintiff's excessive force claim.  (ECF No. 102 at 7-8.)  Be that as it may, the sanctions ordered in case 3:15-cv-0499-MMD-WGC only apprise the jury of pretrial misconduct, and nothing more.  There will be no suggestion that defendants are directly responsible for this misconduct.  The differing elements and relevant factual disputes between the two cases will mediate the effect of imposing the same sanction in both cases.  There is no available inference regarding the video evidence or its spoliation that directly supports an element

of plaintiff's excessive force or retaliation claim. By contrast, plaintiff's due process claim in 3:15-cv-0499-MMD-WGC requires the jury to determine whether plaintiff was deprived of witnesses. The court can think of no lesser sanction that will correct the evidentiary prejudice that plaintiff has suffered.

## IV. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that spoliation sanctions are warranted in this case. Neither dismissal nor an adverse inference is appropriate in this case. However, the court finds it appropriate to allow plaintiff to present evidence and argument to the jury that he asked for this video footage, that the prison had a duty to preserve the footage, and that the video would have shown there were other inmates present in the wings of the Unit 5 Rotunda who may have witnessed the incident between plaintiff and Smith.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion seeking permission to file a spoliation/destruction of video tape evidence against defendants (ECF No. 91) **be GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER RECOMMENDED** that plaintiff be allowed to present evidence and argument to the jury that he asked for this video footage;

**IT IS FURTHER RECOMMENDED** that plaintiff be allowed to present evidence and argument to the jury that the prison had a duty to preserve the footage;

**IT IS FURTHER RECOMMENDED** that plaintiff be allowed to present evidence and argument to the jury that the video would have shown there were other inmates present in the wings of the Unit 5 Rotunda that may have witnessed the incident between plaintiff and Smith.

**DATED:** April 4, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**